# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN BUTLER,<br><br>        *Plaintiff*,<br>v.<br><br>CARDIFF HEALTHCARE, INC. and THE ENSIGN GROUP, INC.,<br><br>        *Defendants*. | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-01114-JNP<br><br>District Judge Jill N. Parrish |

Before the court are two motions for summary judgment: (1) a motion filed by defendants Cardiff Healthcare, Inc. and the Ensign Group, Inc. (collectively, "Defendants") and (2) a motion filed by plaintiff Brian Butler ("Butler"). The court DENIES both motions.

## STATEMENT OF FACTS

Butler began working for Defendants in April 2009 as a certified nursing assistant. In or around 2011 or 2012, Butler accepted the position of plant manager at the Paramount Health and Rehabilitation Center ("Paramount"). Prior to November 2016, Butler's duties as plant manager included supervision of Paramount's maintenance, housekeeping and laundry departments. Butler also oversaw van driving and central supply, which involved ordering supplies for the Paramount facility. Butler supervised four to five employees, including an assistant and housekeeping and laundry staff. Butler had the authority to hire and fire these employees.

In November 2016, Paramount hired a new executive director, Mark Nelson ("Nelson"). Nelson was Butler's direct supervisor. Butler testified that Nelson told him that he was no longer authorized to hire or fire other employees without Nelson's direction or approval. Additionally, Butler was no longer in charge of van driving. Notwithstanding these changes, Butler retained his

title and pay and continued to supervise the housekeeping and laundry departments, which consisted of three full-time employees and one part-time employee. Throughout his time as plant manager, Butler was always compensated on a salary basis in an amount not less than $455 per week.

On November 21, 2016, Butler had the following text message exchange with Paramount's receptionist, Ali Christensen:

> Ali: Brian did you just hire for your housekeeping position? I am posting ads so I just wondered if you need one or not
> . . .
> Brian: . . . Yes waiting for her background ok

On May 9, 2017, Butler signed a new hire form as "Manager" for a new housekeeping employee. On that same day, he also signed an offer letter as "Supervisor," offering that housekeeping employee a position of employment at Paramount. On July 24, 2017, Butler again signed as "Manager" for another new housekeeping employee. Each time that Butler signed as "Manager," the signature line for "Executive Director" was left blank.

The record contains contradictory evidence regarding whether these employees were actually hired on Butler's authority or recommendation. In his affidavit, Nelson stated that Butler did not select employees between October 2016 and September 2017. But K.C. Ellis ("Ellis"), who replaced Nelson as interim executive director on or around September 13, 2017, stated in his deposition that "[b]oth of the employees referenced in these documents were actually hired to be Paramount housekeeping employees on Mr. Butler's authority."

On March 6, 2017, Butler was placed on a Performance Improvement Plan ("PIP") by Nelson. According to the PIP, Butler's performance areas or issues requiring improvement were as follows: "Organization & cleanliness. Office area needs to be cleaned and organized. Maintenance related assignments need to be followed through and completed in a timely hour.

Need to have better communication if assignments/tasks cannot be completed as planned." The PIP further states: "Failure to correct and meet performance expectations . . . will result in further disciplinary action, up to and including, employment termination." Although the PIP states that Nelson and Butler had "discussed these things multiple times," Butler testified that the PIP was the first time Nelson had spoken with Butler about issues concerning his work performance.

Following placement on the PIP, Butler's organization and cleanliness improved. On the second page of the PIP, there is a note that is initialed by Nelson dated March 17, 2017. It states: "Reviewed progress from previous week Brian has shown good improvement. Office is neat and organized. W/C log caught up Brian doing well." A second note, dated March 28, 2017, follows and states: "Brian doing [sic] still organized and clean. Great attitude and contributing to good culture."

On April 25, 2017, Nelson sent Butler a formal disciplinary warning via email. The email states: "In reviewing your mileage log you submitted for March, your mileage you are claiming is not accurate." The email continues: "This is dishonest and in my eyes is theft. Brian, I need to be able to trust you as an employee and this only shows me that you are dishonest and trying to take advantage of your independence in the workplace. Consider this a formal disciplinary warning." Butler and Nelson subsequently discussed the mileage and Butler informed Nelson that he would calculate his mileage without writing down each separate destination. Butler testified that after speaking with Nelson, "everything was fine" and he therefore didn't consider the email to constitute a formal disciplinary warning. In his affidavit, Nelson also stated that this issue was later "cleared up."

On or around September 13, 2017, Nelson's employment with Paramount was terminated, and Ellis took over as interim executive director. On or around that same day, Butler applied for leave under the Family and Medical Leave Act ("FMLA") for an upcoming neck surgery.

On September 18, 2017, Butler formally met Ellis one-on-one and informed Ellis that he would be taking FMLA leave. Butler states that immediately after informing Ellis of his upcoming FMLA leave, Ellis "began to target [Butler], harassing him, discriminating against him, setting unreasonable expectations for [him] and treating him disparately." Specifically, Butler claims that Ellis called him "white trash" and "filthy." According to Butler, this harassment occurred "[o]nce a day." Although Butler states that Ellis began harassing him on September 18, 2017 and continued to do so until Butler's termination on October 6, 2017, Butler was absent from work due to a vacation and a sick leave unrelated to FMLA from September 22, 2017 to October 2, 2017.

Butler states that at some time between September 18, 2017 and September 21, 2017, he spoke with HR representative Julie Kump about the harassment that he felt had resulted from his application for FMLA. Julie Kump instructed Butler to call Paramount's Compliance Hotline and report the harassment. Butler testified that he did so at some point during his sick leave.

On the morning of September 22, 2017, the day on which Butler was scheduled to depart on vacation, Ellis and Butler met to discuss concerns with Butler's work performance. Following the meeting, Ellis sent Butler an email, outlining those concerns. The email states:

> "9/22/2017-We had a discussion about the poor performance that is happening currently at Paramount. During this meeting we discussed the following performance gaps that I am seeing in the facility right now: a) The whole facility is extremely dirty. As the manager of plant, housekeeping, and laundry it is your responsibility to maintain a clean and presentable facility. . . . b) We reviewed the floors in the facility. . . . The floors are not cleaned at this time. . . . c) We discussed that I have concerns that you do not follow up with what you are committing to complete. . . . d) We discussed that I wanted to give you the weekend to think about if this is a job that you currently want. It is an option to you that you can step down . . . . e) We discussed that your performance needs to improve immediately. . . . It

4

was set as a clear expectation that if there is not improvement that your employment as a maintenance director would be terminated. f) We discussed the actions for you to take if you disagree with this final warning that you are receiving."

This email also includes an excerpt outlining a similar meeting that the email states occurred on September 19, 2017 between Butler and Ellis. But Butler testified that he and Ellis did not discuss any concerns with Butler's work performance on that day.

On September 24, 2017, Butler returned from his vacation. The following day, Defendants approved Butler's FMLA request for medical leave beginning October 18, 2017 with an expected return date of December 2, 2017.[1] On September 25, 2017, Butler took sick leave unrelated to his FMLA leave.

Butler returned from sick leave on October 2, 2017. On October 4, Butler met with Ellis and two other Paramount employees for a performance improvement review. During this meeting, Ellis walked Butler around the Paramount facility and pointed out to Butler a number of ongoing issues related to Butler's work performance. That afternoon, Ellis sent Butler an email recapping the meeting and outlining the ongoing issues that had been pointed out to Butler. The email states, in part: "You agreed that there is a pattern here of maintenance items not getting completed . . . . As discussed today we need to see improvement immediately or you [sic] employment could be terminated. . . . We will again review this list on Friday to monitor improvements." Ellis testified that "[t]here was no time frame on when this needed to be done." He continued to state that "[i]t was just that we needed to see some substantial action taken towards a majority of these in a reasonable time frame." During his deposition, Butler was asked whether he recalled receiving a copy of this email on or about October 4, 2017, to which he responded "[n]o." He testified that he "never saw [the October 4, 2017] email."

---

[1] Butler's FMLA approval stated that Butler was an FLSA exempt employee.

5

On the morning of October 5, 2017, Butler hit his head on a door while working and filled out an incident report. He was diagnosed with a possible concussion from a treating physician.

On October 5, 2017, Butler also filed this lawsuit against Defendants, alleging two claims: (1) failure to provide Butler with overtime compensation under the Fair Labor Standards Act ("FLSA") from November 1, 2016[2] to October 6, 2017 due to Defendants' alleged intentional misclassification of Butler as an employee exempt from overtime compensation and (2) retaliation for requesting FMLA leave in the form of harassment and discriminatory treatment. In the complaint, Butler states that since November 1, 2016, he has worked an average of 78 hours per week.

Ellis testified that by October 6, 2017, Butler had not made any substantive progress toward fixing the maintenance issues brought to Butler's attention during the October 4, 2017 meeting. Butler was terminated from his position at Paramount on October 6, 2017, one day after filing his complaint. Butler's notice of discharge states the following: "Reason(s) why counseling/disciplinary action is necessary . . . . Failure to make sufficient progress on list that was given to [Butler] on 9/22/2017 and again on 10/4/2017." This notice also included a section for "Employee's Comments," in which Butler wrote: "This is due to FMLA and was approved [sic] I was attacked daily or whenever he KC was in the building." Butler refused to sign the notice of discharge.

Defendants' Employee Handbook, which Butler signed, states, in part:

---

[2] Butler does not allege that he was improperly classified as exempt from overtime compensation under the FLSA prior to November 1, 2016. *See* Complaint, ¶ 14-15; Butler Depo. at 109:16-21. In his deposition, Butler testified that he considered himself FLSA exempt prior to November 2016, and that only after Nelson became executive director in November 2016 and informed Butler that he was no longer able to hire or fire other employees without Nelson's direction or approval did Butler no longer consider himself FLSA exempt. Butler Depo. at 109:16-110:3.

> When an employee fails to meet our standards of conduct, management reserves the right to determine the type, form and severity of corrective and/or disciplinary action, up to and including discharge. . . . However, if the problem continues or recurs, it will progress to more serious discipline . . . . All work rule violations are cumulative for performance management purposes. This means that an employee does not need to violate the same rule to receive progressively more severe discipline, up to and including termination.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "In applying this standard, [the court views] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). At the summary judgment stage, the court may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## ANALYSIS

### I.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*A. The FLSA Claim*

Defendants argue that Butler's FLSA claim fails as a matter of law because Butler was a bona fide executive employee exempt from overtime compensation under the FLSA and is therefore not entitled to backpay.

"[T]he FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1138 (2018); *see* 29 U.S.C. § 207(a). "But the FLSA exempts many categories of employees from this requirement." *Encino Motorcars*, 138 S.Ct. at 1138; *see* 29 U.S.C. § 213. Specifically, "any employee employed in a bona fide executive . . . capacity . . . as such terms are defined . . . by regulations of the Secretary [of Labor]," 29 U.S.C § 213(a)(1), "are exempt from the FLSA's requirements and are thus ineligible for overtime compensation," *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015). A bona fide executive employee exempt from FLSA requirements is regulatorily defined as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 CFR § 541.100(a). "The employer has the burden of showing that its employee[] [is] exempt from the FLSA's overtime provisions." *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 657 (10th Cir.

1995). Although the exemptions are to be construed fairly, rather than narrowly, *Encino Motorcars*, 138 S.Ct. at 1142, "the employer must show the employee[ ] fit[s] 'plainly and unmistakably within [the exemption's] terms,'" *Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993) (alterations in original) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

Defendants must prove the existence of each of the four requirements necessary to show that Butler is exempt from overtime compensation under the FLSA. Defendants are not entitled to summary judgment on this claim because there is a genuine issue of material fact as to the fourth requirement: that Butler had the authority to hire and fire or his recommendations were given particular weight.

Viewing the facts and inferences in a light most favorable to Butler, Nelson told Butler in November 2016 that he was no longer able to hire or fire other employees without Nelson's direction or approval. Butler testified that prior to November 2016, he had the authority to make hiring and firing decisions without the direction of the executive director. After November 2016, however, Butler's authority to do so was "taken away" by Nelson. Moreover, according to Nelson's affidavit, "[b]etween October 2016 and September 2017 [Butler] did not interview, select or train employees," nor did he discipline employees.[3] As such, the above evidence permits a jury

---

[3] In their motion for summary judgment, Defendants object to Nelson's affidavit and ask the court to strike it on the grounds that it contradicts Butler's deposition testimony and thus constitutes a sham affidavit. Defendants misconstrue the sham affidavit rule. The sham affidavit rule arises only when a party creates an issue of fact by submitting an affidavit that contradicts *the affiant's* prior sworn statements. *See e.g.*, *Franks v. Nimmo*, 796 F.3d 1230 (10th Cir. 1986). Here, Defendants contend that Nelson's affidavit contradicts *Butler's* testimony. Therefore, the sham affidavit rule does not apply. Defendants also object to Nelson's affidavit on the grounds that it is "rife with legal conclusions." But Nelson attests to specific facts in his affidavit that are based on him being "personally familiar" with Butler and acting as his direct supervisor between October 2016 and September 2017, and therefore does not present merely his own opinions or conclusions. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence . . . ." (citations omitted)). Therefore, Defendants' objections are overruled.

9

to infer that although Butler may have had the ability to hire or fire other employees prior to November 2016, he was no longer able to do so after Nelson became executive director. A jury could conclude, therefore, that Butler did not qualify as a bona fide executive employee exempt from overtime pay after November 2016.

Although Defendants point to evidence that supports a finding that Butler did, in fact, have the authority to hire or fire other employees after November 2016—namely, text messages, new hire forms and an offer letter signed by Butler, and Ellis's Declaration—the judge's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. In this case, Butler's evidence—specifically, Butler's deposition and Nelson's affidavit—supports a reasonable jury finding that Butler did *not* have the authority to hire or fire other employees and therefore was not exempt from overtime pay under the FLSA.

There is also a dispute of fact as to whether Defendants gave particular weight to Butler's suggestions and recommendations as to the hiring, firing, or advancement of other employees. The Department of Labor has provided the following information regarding the definition of "particular weight":

> To determine whether an employee's suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon . . . . An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if

---

Moreover, even if the court were to strike Nelson's affidavit, Defendants' motion for summary judgment would still fail due to the factual dispute created by Butler's deposition testimony.

> the employee does not have authority to make the ultimate decision as to the
> employee's change in status.

29 C.F.R. § 541.105.

Although Defendants presented evidence suggesting that Butler had the authority to hire or fire other employees, they failed to argue or point to any evidence indicating whether Butler gave recommendations as to the change of status of other employees and whether those recommendations were given particular weight. Defendants assert that the demonstrated evidence indicates that "at a minimum . . . Butler's suggestions and recommendations as to hiring other employees were given particular weight." However, Defendants do not expand upon this assertion nor do they present specific evidence that supports it.

Accordingly, Defendants have not met their burden of demonstrating the absence of disputed facts regarding any deference they gave to any hiring or firing suggestions Butler may have given. Because Defendants never shouldered their initial burden of showing that they are entitled to summary judgment on this issue, the burden never shifted to Butler to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, because Defendants have not shown that they are entitled to summary judgment on Butler's FLSA cause of action, their motion with respect to this claim is denied.

   *B. The FMLA Claim*

Butler's second cause of action alleges retaliation in violation of the FMLA. In their motion for summary judgment, Defendants argue that Butler was terminated from Paramount for a legitimate, nonretaliatory reason: Butler's repeated poor work performance. But Defendants are

not entitled to summary judgment on this claim because there is a dispute of material fact as to whether their proffered reason for Butler's termination was pretextual.

"[The Tenth Circuit] has recognized two theories of recovery under [29 U.S.C.] § 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). "The[se] two theories require different showings and differ with respect to the burden of proof." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

"Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas*." *Metzler*, 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation." *Id.* "If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action." *Id.* "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* "To satisfy this step… [the plaintiff] must show that [the defendant's] asserted reason 'was not the true reason for the employment decision.'" *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013).

The parties agree that Butler has established a prima facie case of retaliation. The burden thus shifts to Defendants to demonstrate a legitimate, non-retaliatory reason for Butler's termination.[4] "The defendant's burden is 'exceedingly light' as [Defendants'] stated reasons need only be legitimate and non-discriminatory 'on their face.'" *DePaula v. Easter Seals El Mirador*,

---

[4] In Butler's Complaint, he alleges that Defendants retaliated against him for applying for FMLA leave by "harassing him, discriminating against him, setting unreasonable expectations for [him] and treating him disparately." However, both Defendants' motion for summary judgment and Butler's motion for summary judgment identify Butler's termination as the alleged retaliatory act. Thus, for purposes of this Order, the court will consider the alleged retaliatory act to be Butler's termination.

12

859 F.3d 957, 970 (10th Cir. 2017) (citations omitted). Moreover, "the defendant's 'burden is one of production, not persuasion; it can involve no credibility assessment.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). In this case, Defendants assert that Butler was terminated due to "a long history of performance problems involving organization and cleanliness issues and his failure to complete required work." On its face, a "long history" of work performance issues is a legitimate and non-discriminatory reason for employee termination. Therefore, Defendants have satisfied their burden of offering a non-retaliatory reason for Butler's termination.

To defeat Defendants' Motion for Summary Judgment then, Butler must present evidence to establish that "there is a genuine dispute of material fact as to whether [Defendants'] proffered reason for [Butler's termination] is pretextual—i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "[Butler] may show pretext by demonstrating that the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" *DePaula*, 859 F.3d at 970 (10th Cir. 2017) (quoting *Tabor*, 703 F.3d at 1218; *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016)). "This is often accomplished 'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (quoting *Tabor*, 703 F.3d at 1216).

Viewing the facts and inferences in a light most favorable to Butler, there is evidence to support a finding that Defendants' proffered reason for terminating Butler is pretextual. Specifically, Butler relies on Ellis's deposition testimony to establish that Butler's employment was terminated because Defendants considered Butler to be a liability. When asked whether there

13

were "additional concerns other than just the obvious performance issues," Ellis responded, in part:

> Well, at this point I – we – it had been established that [Butler] was having surgery on his neck . . . I mean, it was very clear that [Butler] knew that he was getting close to being terminated if he didn't improve his performance and . . . I kind of felt like he was in a way maybe trying to get to a point where the neck – whatever is going on with his neck was going to be, like, a workmen's comp thing.

Ellis was then asked whether he believed Butler was trying to create an incident when he was injured while working on October 5, 2017. Ellis responded: "I felt like [Butler] at this point became a liability. Like, he was already a liability, but at this point he was now a liability outside of just what we were seeing inside the facility." Although this testimony is not entirely clear, a jury could interpret it to indicate that Butler may have been terminated because Defendants' considered him to be a liability due to his FMLA leave request for neck surgery and not because of issues with his job performance. In other words, from this evidence, a jury could reasonably infer that Defendants' proffered reason for termination, i.e., a long history of job performance issues, was pretextual.

Because Butler's evidence creates a dispute of material fact that could render Defendants' proffered reason for termination to be "unworthy of credence," summary judgment on this claim is unwarranted and Defendants' summary judgment motion with respect to Butler's FMLA claim is denied.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[5]

### A. *The FLSA Claim*

In his Motion for Summary Judgment, Butler provides a conclusory one-sentence argument that "Defendants have not provided any facts supporting [their] claim that Butler was exempt under

---

[5] In his Motion for Summary Judgment, Butler states that he has alleged three causes of action against Defendants: (1) failure to pay overtime compensation in violation of the FLSA, (2) retaliation and interference in violation of the FMLA, and (3) wrongful termination in violation of public policy of the State of Utah. Butler's Complaint, however, contains only two causes of

14

FLSA and cannot provide such facts." Butler did not submit any further argument, cite facts in support of this statement, or alert the court to any documents that demonstrate or support his position. Although Defendants carry the burden of proving an exemption,"[i]t is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work-framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts." *Ve Thi Nguyen v. Colvin*, No. C13-882 RAJ-BAT, 2014 WL 1871054, at *2 (W.D. Wash. May 8, 2014). In short, Butler's argument fails due to inadequate briefing. *See, e.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) (declining to consider the merits of retaliation claim due to inadequate briefing); *Sheedy v. BSB Properties, LC*, No. 2:13-CV-00290-JNP, 2016 WL 6902513, at *5 (D. Utah Mar. 1, 2016) (denying cross motions for summary judgment due to "inadequate briefing on the relevant legal issues and the insufficient factual support provided therein.").

Furthermore, Butler's statement is incorrect. As previously discussed, Defendants have provided evidence supporting their assertion that Butler was a bona fide executive employee exempt from overtime compensation. Butler's Motion for Summary Judgment with respect to his FLSA claim is therefore denied.

B. *The FMLA Claim*

As stated above, once a defendant has met its burden of articulating a legitimate, non-retaliatory reason for its employment decision, the burden shifts to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Metzler*, 464 F.3d at 1170. Butler contends that

---

action: one for failure to pay overtime compensation under the FLSA, and a second for retaliation in violation of the FMLA. Therefore, this court will only address the FLSA and FMLA claims.

15

Defendants' proffered reason for his termination is pretextual by pointing to Ellis's deposition testimony, which Butler asserts supports his contention that he was fired because Defendants considered him to be a liability. To defeat Butler's Motion for Summary Judgment, Defendants must present evidence that rebuts Butler's pretext claim and establishes a genuine issue of material fact as to whether their stated reason for terminating Butler is legitimate.

"When assessing a contention of pretext, [the court] examines the facts 'as they appear to the person making the decision to terminate [the] plaintiff.'" *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). "[T]he relevant inquiry is not whether [the employer's] proffered reasons were wise, fair[,] or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those believes [sic]." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (citation omitted). "Moreover, [the court's] role is not to second guess an employer's business judgment." *Id.*

In viewing the facts and inferences drawn from them in a light most favorable to Defendants, there is evidence to support a finding that Butler did have a "long history of failing to complete his assigned tasks and failing to maintain cleanliness and organization at [Paramount]." On March 6, 2017, Butler was placed on a Performance Improvement Plan ("PIP") by Nelson, due to issues with Butler's organization, cleanliness, and ability to complete maintenance related assignments in a timely manner. Although Butler's organization and cleanliness improved shortly thereafter, Butler received a "formal disciplinary warning" via email on April 25, 2017 due to mileage concerns. On September 22, 2017, Ellis and Butler met to discuss concerns with Butler's performance that mirrored those that prompted Butler's placement on the PIP. The email that followed this meeting detailed those concerns and issued Butler a "final warning." On October 4,

2017, Butler met with Ellis again. During this meeting Ellis and Butler walked around the Paramount facility and Ellis pointed out to Butler ongoing maintenance issues that required his immediate attention. The email that accompanied this meeting stated, in part, that "we need to see improvement immediately or you [sic] employment could be terminated . . . We will again review this list on Friday to monitor improvements." Two days later, Defendants determined Butler had not made substantive progress on the list of ongoing maintenance issues provided to him on October 4, 2017. On October 6, 2017, Butler was terminated from his position at Paramount.

In his deposition, Ellis testified that there had been an "ongoing concern about [Butler] and his ability in the current role that he was in." Ellis further testified that at the time of his meeting with Butler on September 22, 2017, Ellis "felt that the cleanliness standards and some of the areas that were addressed in [the PIP] had eroded to a point that it needed to be reevaluated." When asked why Butler was terminated from Paramount, Ellis responded that "there wasn't sufficient progress [on the list of ongoing maintenance issues provided to Butler on October 4, 2017] and that I wasn't going to allow that to continue because it was affecting not only how the facility looked, but it was affecting the residents, . . . safety, . . . [and] morale of the facility."

From these facts, a jury could reasonably conclude that Ellis honestly believed that Butler had a "long history of failing to complete his assigned tasks and failing to maintain cleanliness and organization at [Paramount]," and was therefore justified in terminating Butler. In other words, Defendants have provided sufficient evidence to raise a factual dispute over Butler's claim that Defendants' proffered reason for termination was pretextual. Accordingly, Butler's motion for summary judgment with respect to his FMLA claim is denied.

## CONCLUSION AND ORDER

For the reasons articulated, Defendants' motion for summary judgment (ECF No. 25) and Butler's motion for summary judgment (ECF No. 27) are DENIED.

Dated August 8, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge